Corey A. Evans (Cal. Bar No. 218789)
cevans@evansandpage.com
Geneva Page (Cal. Bar No. 235633)
gpage@evansandpage.com
EVANS & PAGE
2912 Diamond Street #346
San Francisco CA 94131
Ph:   (415) 896-5072
Fax: (415) 358-5855

Matthew Liebman (Cal. Bar No. 248861)
mliebman@ALDF.org
ANIMAL LEGAL DEFENSE FUND
170 East Cotati Avenue
Cotati CA 94931
Ph:   (707) 795-2533
Fax: (707) 795-7280

Matthew Strugar (Cal. Bar No. 232951)
matthew-s@petaf.org
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
Ph:   (323) 210-2263
Fax: (202) 540-2208

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, a non-profit corporation; PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., a non-profit corporation;<br><br>           Plaintiffs,<br><br>      v.<br><br>THE GREAT BULL RUN, LLC; LONE STAR RODEO, LLC; DOES 1-10;<br><br>           Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**Jurisdiction**. This Court has jurisdiction over the subject matter of the complaint because all plaintiffs and all defendants are citizens of different states disputing more than $75,000, pursuant to 28 U.S.C. section 1332. The Court has personal jurisdiction over the defendants because each has sufficient minimum contacts with California, including the planning, promotion, marketing, and intended conduct that is at the center of this lawsuit, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Each has purposefully directed its conduct at California and availed itself of the benefits and protections of California law.

**Venue**. Venue is appropriate in this Court because plaintiff Animal Legal Defense Fund resides in this district, and a substantial amount of the acts and omissions giving rise to this lawsuit will occur in this district.

**Intradistrict Assignment**. This lawsuit should be assigned to the San Francisco Division of this Court because plaintiff Animal Legal Defense Fund resides in Sonoma County and a substantial part of the events or omission which give rise to this lawsuit will occur in Alameda County.

## I.     INTRODUCTION

This is an action under the California Unfair Competition Law to enjoin the Great Bull Run – a dangerous and unlawful event in which the organizers cause as many as three dozen panicked bulls, each weighing nearly a ton, to stampede down a narrow track at up to thirty-five miles per hour after up to a thousand fleeing runners, many of whom have been drinking alcohol. Not surprisingly, participants have been injured at prior Great Bull Run events, and veterinary experts have concluded that the event causes unnecessary suffering and stress to the animals.

Recognizing the inherent danger that this cruelty poses to both humans and animals, the California Penal Code makes it unlawful to cause any bull to fight with a human, or for any person to worry a bull or cause a bull to worry or injure another bull. The Penal Code also makes it unlawful to exhibit bulls in any contest or exhibition that is similar to a "bloodless bullfight." The Great Bull Run violates these provisions, and in doing so,

engages in unlawful business practices that must be enjoined under the California Unfair Competition Law.

## II. PARTIES

1.  Plaintiff ANIMAL LEGAL DEFENSE FUND ("ALDF") is a national non-profit organization incorporated in California, and headquartered in Cotati, California. ALDF is dedicated to protecting the lives and advancing the interests of animals through legislation, litigation, public outreach, and media campaigns. ALDF's efforts are supported by hundreds of dedicated attorneys and more than 110,000 members. ALDF has long been involved in the protection of animals used for entertainment. As alleged in more detail below, ALDF has diverted significant resources to combating the Defendants' illegal bull runs, educating the public about this inhumane practice, and working to convince public officials not to allow such events to take place, all of which has caused ALDF to lose money that could have been spent on other projects to advance its mission. ALDF could have avoided these expenditures if Defendants were not conducting bull runs.

2.  Plaintiff PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC. ("PETA") is a Virginia non-stock corporation and animal protection charity pursuant to Section 501(c)(3) of the Internal Revenue Code, with an office located in Los Angeles, California. PETA is dedicated to protecting animals from abuse, neglect, and cruelty. As alleged in more detail below, PETA has diverted significant resources to combating the Defendants' illegal bull runs, educating the public about this inhumane practice, and working to convince public officials not to allow such events to take place, all of which has caused PETA to lose money that could have been spent on other projects to advance its mission. PETA could have avoided these expenditures if Defendants were not conducting bull runs.

3.  Defendant The Great Bull Run, LLC, ("GBR") is a domestic limited liability company organized on January 17, 2013, in Massachusetts. The registered address for GBR is 236 Huntington Street, Suite 303, Boston, Massachusetts 02115.

4. Defendant Lone Star Rodeo, LLC, is a Kentucky limited liability company organized in 2004. The registered address for Lone Star Rodeo is 283 Old Haleys Mill Road, Crofton, Kentucky 42217.

5. Plaintiffs do not know the true names and capacities of the defendants named in this action as DOES 1-10, and therefore, sue them under fictitious names. Plaintiffs will request permission to amend this complaint, or substitute the Doe Defendants via a court-approved form, to state the true names and capacities of these fictitiously named Defendants when they ascertain them. Plaintiffs allege that these fictitiously named Defendants are legally responsible in some manner for the acts set forth below, and accordingly, are liable for the relief requested.

6. Plaintiffs are informed and believe, and on that basis allege, that at all times herein mentioned each of the Defendants was the agent, servant, employee, and/or co-conspirator of each of the other Defendants, and, in doing the acts hereinafter alleged, was acting within the course and scope of their authority as such agent, servant, employee, and/or co-conspirator with the permission and consent of their co-Defendants and, further, that the Defendants, and each of them, have authorized, ratified, and approved the acts of each of the other Defendants with full knowledge of those acts.

### III. STATUTORY FRAMEWORK

*California's Unfair Competition Law*

7. California's Unfair Competition Law ("UCL"), Business & Professions Code sections 17200 *et seq.*, prohibits businesses from engaging in unlawful, fraudulent, or unfair business practices.

8. An action based on Section 17200 to redress an unlawful business practice essentially borrows violations of other laws and treats them as a violation of Section 17200. In other words, a business practice is "unlawful" under Section 17200 when it violates another state law.

9. California Business and Professions Code Sections 17203 and 17204 allow private parties who have lost money or property to ask a court to enjoin unlawful business

practices.

*California's Animal Cruelty Prohibitions*

10. Under California Penal Code section 597b, it is a misdemeanor for any person to "cause[] any bull . . . to fight with . . . any human being" or "worr[y] or injure[] any bull, . . . or causes any bull . . . to worry or injure each other."

11. It is also a misdemeanor for a person to "aid[] or abet[] the fighting or worrying of an animal or creature" or to "permit[] the same to be done on any premises under his or her charge or control." CAL. PENAL CODE § 597b.

12. Under California Penal Code section 597m, it is a misdemeanor for any person to "promote, advertise, stage, hold, manage, conduct, participate in, engage in, or carry on any . . . bloodless bullfight contest or exhibition, or any similar contest or exhibition, whether for amusement or gain or otherwise."

13. Section 597(b) of the California Penal Code makes it unlawful for any person "having the charge or custody of any animal, either as owner or otherwise, [to] subject any animal to needless suffering." CAL. PENAL CODE § 597(b). Needless suffering may occur when an animal suffers for an illegitimate purpose, or when the suffering is disproportionate to a purpose recognized as legitimate.

## STATEMENT OF FACTS

*Details Regarding the Great Bull Run Events*

14. GBR has staged four Great Bull Run events in which panicked and agitated bulls chase down fleeing runners.

15. GBR plans to hold nine more events in 2014, including one in Northern California on July 26 at the Alameda County Fairgrounds and another in Southern California on June 21 in Temecula.

16. Each GBR event draws approximately 3,000 paying participants, and the average ticket price is $49 per person.

17. An injunction in this case would cost defendant GBR more than $75,000 in damages from lost ticket sales, and concession stand losses.

18. Lone Star Rodeo operates a ranch in Kentucky that supplies bulls and steers to GBR for its events. On information and belief, these animals are transported thousands of miles back and forth across the country in trailers for each event.

19. On information and belief, plaintiffs allege all of the following: (1) Lone Star Rodeo and defendant GBR conspired to produce the GBR events around the country for their mutual financial gain, and each defendant played an indispensable role in the production of the GBR events; (2) Lone Star Rodeo and defendant GBR formed a formal agreement whereby Lone Star Rodeo knew how defendant GBR planned to use the animals in the events, and both defendants shared a common goal and plan that specified the use and treatement of the animals; and (3) the allegations of cruelty described by plaintiffs in this complaint are the same conduct that the defendants planned and agreed upon.

20. GBR events involve people on horses using ropes as whips to scare as many as three dozen bulls – each of which weighs approximately 1,500 pounds – to charge towards as many as 1,000 people arrayed along a quarter-mile track. As the bulls approach at speeds faster than humans can run, the participants try to keep up while avoiding the stampede at their heels. Many runners intentionally run as close to the bulls as possible to provoke them. An eyewitness at the most recent bull run event in Florida reported that several runners taunted and punched the bulls as they ran by.

21. These events subject bulls to needless suffering, distress, and unnecessary cruelty.

22. According to veterinary experts, bull runs are dangerous for the animals because bulls may become entangled with other bulls or runners, causing them to slip and break their legs or get gored.

23. Bull runs are also inherently stressful to the bulls, who find themselves in an unfamiliar location surrounded by loud noises, often after having travelled for days in cramped transport trailers. GBR and Lone Star take advantage of this fear and confusion to motivate the animals to stampede.

24. Eyewitnesses at prior bull runs have observed the bulls' reluctance to chase the runners, with some bulls even turning around to flee from the awaiting runners, as

documented in the photograph attached as Exhibit A. Defendants have responded to the bulls' hesitancy by having horseback riders charge at the bulls, threatening them with lassos and whipping them with ropes to force the animals to stampede, as documented in the photographs attached as Exhibits B and C.

25. An eyewitness at the Florida event reported that the bulls were not provided with water during the event.

26. Bull runs are dangerous for humans. In three of Defendants' prior running of the bulls' events, participants were trampled and required hospitalization for their injuries.

27. The Virginia event, held on August 24, 2013, resulted in two people being hospitalized.

28. The Georgia event, held on October 19, 2013, left one man with his pelvis broken in three places. The runner described his other injuries thusly: "My right ankle was rubbed down to the bone. I was bleeding internally some, and I had bruises and abrasions all over. Some of my hair fell out in clumps because my head had slammed against a bull's horn, stripping the skin off part of my scalp. One bull stepped on my lower left leg, so I had a gash and deep bruise there, but fortunately that bone didn't break."

29. The Texas event, held on January 25, 2014, left one man hospitalized with a concussion and other injuries after he was trampled.

30. At the events, alcohol is served to the spectators and contestants, which exacerbates the danger. Numerous reports from past events have described intoxicated participants, including one of the people who escorted the injured Georgia runner to the medical tent, who admitted, "I'm so wasted."

31. Despite the known risk of placing stampeding bulls with 1,000 people on a quarter-mile track, GBR's "Emergency Action & Event Operations Plan" clearly states that if someone is injured on the track, the bulls will still be released and no medical personnel will be allowed to enter the course area. GBR's Emergency Action & Event Operations Plan is attached as Exhibit A.

32. GBR expects that the bulls and the runners will collide during the event. GBR's Chief Operating Officer has said that "broken bones and bloodshed [are] part of the event."

33. Knowing that injuries are likely, GBR has sought to limit its responsibility by requiring contestants to sign a waiver form, a copy of which is attached as Exhibit B.

34. The waiver acknowledges that "THE EVENT IS A HAZARDOUS ACTIVITY THAT PRESENTS A SERIOUS PHYSICAL AND MENTAL DANGER TO PARTICIPANTS AND SPECTATORS." Among the injuries disclaimed by the waiver are "permanent disabilities, damage to internal organs, spinal injuries and paralysis, stroke, heart attack and death."

35. GBR advertised a Southern California bull run, originally scheduled for March 2014, in Lake Elsinore. The city, however, denied GBR's permit application in November because, as the city manager put it, "this event invited inexperienced, untrained and unprotected participants to take part in what could be a dangerous and unpredictable activity."

36. Lake Elsinore's letter denying GBR's permit application is attached as Exhibit C.

***ALDF Has Invested Time and Money to Investigate and Try to Prevent the Great Bull Run's Events***

37. ALDF has been a vocal opponent of the Great Bull Run almost since its inception, because the inhumane treatment of animals as spectacles frustrates its organizational mission of ensuring that animals are treated with respect and compassion.

38. After hearing about the Virginia event, ALDF began spending organizational resources on combatting GBR's violations of laws by committing staff time and resources to educating the public about the animal welfare concerns, mobilizing opposition such as petition drives, researching permitting requirements, submitting public records requests to local governments, reviewing responsive documents, and speaking with state agencies and local officials about the event, all of which constitute lost money and property under section 17204 of the Business & Professions Code. These expenditures of organizational resources include, but are not limited to, the following examples:

a. consulting with a veterinarian about animal suffering during bull runs;

b. drafting a "white paper" that outlined policy arguments against bull runs, which ALDF has distributed to decision-makers in other states;

c. receiving and responding to concerned calls and emails from the public about the events;

d. researching federal laws concerning animal exhibitions under the Animal Welfare Act;

e. researching state laws and regulations in Georgia, Texas, Florida, and California concerning animal welfare, public health, public safety, and veterinary standards;

f. writing and sending letters to officials with the Georgia Department of Agriculture; the City of Conyers, Georgia; the City of Lake Elsinore, California; Riverside County, California; and Chambers County, Texas, calling on them to cancel the Great Bull Run because of the event's danger to humans and animals and because of GBR's failure to timely obtain required state permits;

g. sending a public records request to Chambers County and reviewing the responsive records to determine whether GBR applied for the proper permits;

h. issuing and servicing press releases concerning ALDF's opposition to the Great Bull Run, including interviews with CNN and local news outlets in Georgia and Texas, and published stories in California;

i. posting stories, blogs, and action alerts on ALDF's website and Facebook account;

j. recruiting members of ALDF's student chapters to attend and film the Great Bull Run events in Texas and Florida and paying their admission fees and expenses; and

k. purchasing tickets and paying for expenses for its staff to attend, monitor, and film the California events.

39. Many of these expenditures forced ALDF to divert resources away from its core mission.

40. These expenditures of organizational resources were unrelated to this litigation and were not undertaken in contemplation of or to facilitate this litigation, but were instead undertaken as part of ALDF's non-litigation outreach, education, advocacy, and lobbying.

41. ALDF would prefer to shift its resources to other projects that would help other animals, garner new members, and advance its mission, but it is prevented from doing so by GBR's ongoing violations of law. Were ALDF to call off its campaign against GBR and fail to respond to the events in California, the state in which ALDF is headquartered, ALDF would suffer harm to its reputation, credibility, and finances. ALDF's members and supporters expect it to initiate campaigns against animal cruelty and to finish the campaigns it begins. As an incorporated non-profit, ALDF is required by its charter to combat animal cruelty. In this sense, ALDF is compelled to divert organizational resources to counteract GBR's unlawful business practices, lest it lose the support (financial and otherwise) of its members, even though its resources could be spent on other projects that more effectively advance its mission.

*PETA Has Invested Time and Money in Preventing the Great Bull Run's Events in Order to Protect Humans and Animals*

42. PETA has been a vocal opponent of the Great Bull Run since it announced its initial event because the inhumane treatment of animals frustrates its organizational mission of eliminating cruelty to animals who are transported and exhibited for entertainment.

43. PETA has diverted and continues to divert organizational resources to combating GBR's violations of laws by, inter alia, investigating GBR by purchasing a ticket to a previous GBR event, compensating staff to monitor and document that GBR event, and compensating staff to review and edit the resultant video; exposing GBR's cruel and abusive treatment of bulls through various outreach efforts; and encouraging venues and locales where GBR events are scheduled to be held to deny requests for permits or cancel planned events in favor of cruelty-free alternatives; and issuing and pursuing more than a

dozen public records act requests aimed at identifying locations for future GBR events in California, all of which constitute lost money and property under section 17204 of the Business & Professions Code. PETA will continue to divert resources by engaging in public outreach and advocacy against GBR, seeking to uncover future GBR locations, and encouraging venues and locales to spurn GBR events; and purchasing tickets and paying for expenses for its staff to attend, monitor, and film the California events.

44. Each of these diversions of organizational resources was unrelated to this litigation and was conducted in furtherance of PETA's non-litigation programs.

45. If it prevails in this action, PETA will no longer have to divert resources to educating the California public about the unlawful and inhumane action of GBR, seeking to uncover future GBR California locations, encouraging California venues and locales to spurn GBR events, and monitoring future GBR California events. Those resources would then be directed to other PETA projects, in furtherance of its overall mission.

## V. CAUSE OF ACTION

Violations of Business & Professions Code Section 17200 *et seq.*
(Unlawful Business Practice)

46. Plaintiffs reallege and incorporate by reference the allegations in each of the preceding paragraphs of this Complaint.

47. Defendants have engaged in acts or practices that constitute unfair competition, as that term is defined in section 17200 *et seq.* of the California Business & Professions Code.

48. Defendants are violating and plan to violate Business & Professions Code §§ 17200 *et seq.* through their unlawful business acts and practices, which violate provisions of the California Penal Code.

49. Specifically, Defendants are already "promot[ing] [and] advertis[ing] [a] . . . bloodless bullfight contest or exhibition, or . . . similar contest or exhibition," in violation of section 597m of the California Penal Code. If allowed to carry through with their plans, they will violate not only that section, but also section 597b, which prohibits making bulls fight with humans, and section 597(b), which prohibits causing "needless suffering" to

animals.

## VI.  PRAYER FOR RELIEF

Plaintiffs hereby pray for:

    a. Injunctive relief under California's Business and Professions Code section 17203, enjoining Defendants and their agents from conducting any bull run in California;

    b. Declaratory relief, to wit, a declaration that Defendants' proposed bull run violates California Penal Code sections 597b, 597m, and 597(b);

    c. Reasonable attorneys' fees pursuant to California's Code of Civil Procedure section 1021.5, or any other applicable statute or common law doctrine;

    d. All costs incurred in this action; and

    e. Any other equitable relief as is just and proper.

Dated:     March 13, 2014                                        Respectfully submitted,

**EVANS & PAGE**

By:   /s/ Corey Allen Evans
       Corey Allen Evans
       Attorney for Plaintiffs