UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND, et al., <br> Plaintiffs, <br> v. <br> THE GREAT BULL RUN, LLC, et al., <br> Defendants. | Case No. 14-cv-01171-MEJ <br><br> **ORDER RE: MOTION TO DISMISS** <br> Re: Dkt. No. 12 |

## INTRODUCTION

Plaintiffs Animal Legal Defense Fund ("ALDF") and People for the Ethical Treatment of Animals ("PETA") (collectively, "Plaintiffs") bring this action under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, to enjoin the "Great Bull Run" event produced by Defendants The Great Bull Run, LLC ("GBR") and Lone Star Rodeo, LLC (collectively, "Defendants").  Pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. No. 12.  Plaintiffs have filed an Opposition (Dkt. No. 16), and Defendants have filed a Reply (Dkt. No. 18).  The Court finds this motion suitable for disposition without oral argument and VACATES the July 3, 2014 hearing.  Civ. L.R. 7-1(b).  Having considered the parties' papers, relevant legal authority, and the record in this case, the Court **DENIES** Defendants' Motion for the reasons set forth below.

## BACKGROUND

The following background is taken from Plaintiffs' Complaint.  Dkt. No. 1.  ALDF is a non-profit corporation that describes itself as "dedicated to protecting the lives and advancing the interests of animals through legislation, litigation, public outreach, and media campaigns."  Compl. ¶ 1.  PETA is a non-stock corporation that describes itself as "dedicated to protecting

animals from abuse, neglect, and cruelty." *Id.* ¶ 2. Plaintiffs contend that GBR organizes events wherein "panicked and agitated bulls chase down fleeing runners." *Id.* ¶ 14. Lone Star Rodeo operates a ranch in Kentucky that supplies bulls and steers to GBR for its events. *Id.* ¶ 18. These animals are transported thousands of miles back and forth across the country in trailers for each event. *Id.*

Plaintiffs describe GBR's events as:

> people on horses using ropes as whips to scare as many as three dozen bulls – each of which weighs approximately 1,500 pounds – to charge towards as many as 1,000 people arrayed along a quarter-mile track. As the bulls approach at speeds faster than humans can run, the participants try to keep up while avoiding the stampede at their heels. Many runners intentionally run as close to the bulls as possible to provoke them. An eyewitness at the most recent bull run event in Florida reported that several runners taunted and punched the bulls as they ran by.

*Id.* ¶ 20. Each GBR event draws approximately 3,000 paying participants. *Id.* ¶ 16. Plaintiffs' Complaint focuses on two events to take place in 2014, one in Northern California on July 26 at the Alameda County Fairgrounds and another in Southern California on June 21 in Temecula. *Id.* ¶ 15.

Plaintiffs allege that the Great Bull Run events subject bulls to needless suffering, distress, and unnecessary cruelty. *Id.* ¶ 21. They state that, according to veterinary experts, bull runs are dangerous for the animals because bulls may become entangled with other bulls or runners, causing them to slip and break their legs or get gored. *Id.* ¶ 22. Bull runs are also inherently stressful to the bulls, who find themselves in an unfamiliar location surrounded by loud noises, often after having travelled for days in cramped transport trailers. *Id.* ¶ 23. Plaintiffs allege that GBR and Lone Star take advantage of this fear and confusion to motivate the animals to stampede. *Id.*

Plaintiffs further allege that bull runs are dangerous for humans, including participants in three of Defendants' prior events that were trampled and required hospitalization for their injuries. *Id.* ¶¶ 26-29. Despite this risk, GBR's "Emergency Action & Event Operations Plan" states that if someone is injured on the track, the bulls will still be released and no medical personnel will be allowed to enter the course area. *Id.* ¶ 31. GBR requires contestants to sign a waiver form, which

2

acknowledges that "THE EVENT IS A HAZARDOUS ACTIVITY THAT PRESENTS A SERIOUS PHYSICAL AND MENTAL DANGER TO PARTICIPANTS AND SPECTATORS." *Id.* ¶ 34.  Among the injuries disclaimed by the waiver are "permanent disabilities, damage to internal organs, spinal injuries and paralysis, stroke, heart attack and death." *Id.*

ALDF states that it has invested time and money in preventing the Great Bull Run events, including spending organizational resources by committing staff time and resources to educating the public about the animal welfare concerns, mobilizing opposition such as petition drives, researching permitting requirements, submitting public records requests to local governments, reviewing responsive documents, and speaking with state agencies and local officials about the event. *Id.* ¶ 38.  PETA also maintains that it has diverted and continues to divert organizational resources to combating the events, including investigating GBR by purchasing a ticket to a previous GBR event, compensating staff to monitor and document that GBR event, and compensating staff to review and edit the resultant video; exposing GBR's treatment of bulls through various outreach efforts; and encouraging venues and locales where GBR events are scheduled to be held to deny requests for permits or cancel planned events in favor of cruelty-free alternatives; and issuing and pursuing more than a dozen public records act requests aimed at identifying locations for future GBR events in California. *Id.* ¶ 43.

On March 13, 2014, Plaintiffs filed the present Complaint, alleging one cause of action for violation of California Business & Professions Code section 17200, *et seq.*  Specifically, Plaintiffs allege that "Defendants are already 'promot[ing] [and] advertis[ing] [a] . . . bloodless bullfight contest or exhibition, or . . . similar contest or exhibition,' in violation of section 597m of the California Penal Code.  If allowed to carry through with their plans, they will violate not only that section, but also section 597b, which prohibits making bulls fight with humans, and section 597(b), which prohibits causing 'needless suffering' to animals." *Id.* ¶¶ 46-49 (alterations in original).

Plaintiffs allege that Defendants: (1) conspired to produce the Great Bull Run events around the country for their mutual financial gain, and each Defendant played an indispensable role in the production of the GBR events; and (2) formed a formal agreement whereby Lone Star

3

1  Rodeo knew how GBR planned to use the animals in the events, and both Defendants shared a
2  common goal and plan that specified the use and treatment of the animals. *Id.* ¶ 19. Plaintiffs
3  seek: (1) injunctive relief, enjoining Defendants and their agents from conducting any bull run in
4  California; (2) declaratory relief, to wit, a declaration that Defendants' proposed bull run violates
5  California Penal Code sections 597b, 597m, and 597(b); and (3) attorneys' fees and costs. *Id.* at
6  12.

7  Defendants filed the present Motion to Dismiss on May 8, 2014. They argue that Plaintiffs
8  lack Article III standing, necessitating dismissal pursuant to Federal Rule of Civil Procedure
9  ("Rule") 12(b)(1). Mot. at 7. Defendants also seek dismissal under Rule 12(b)(6), arguing that
10 Plaintiffs cannot state a claim upon which relief can be granted because the California Penal Code
11 section on which Plaintiffs' UCL claim is based cannot be enforced through a private right of
12 action in civil court. *Id.* at 10.

### LEGAL STANDARD

**A.     Federal Rule of Civil Procedure 12(b)(1)**

Federal district courts are courts of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* Rule 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction.

A party moving to dismiss pursuant to Rule 12(b)(1) may make a facial or a factual attack on jurisdiction. A facial attack challenges the sufficiency of the jurisdictional allegations in a complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, the moving party contends that, even accepting all of the allegations in the plaintiff's complaint as true, the plaintiff has failed to establish that the Court has jurisdiction over the claims. *Id.* In evaluating a facial attack on jurisdiction, the Court must accept the factual allegations in a complaint as true and draw all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

4

By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the Court "need not presume the truthfulness of the plaintiff's allegations" and "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citation omitted).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555.) "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts

5

to give fair notice and to enable the opposing party to defend itself effectively"). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "[D]etermining whether a complaint states a plausible claim [for relief] is [a] context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

**DISCUSSION**

**A.   Article III Standing**

In their Motion, Defendants first argue that Plaintiffs lack Article III standing to bring this case because they cannot demonstrate that they have suffered an "injury in fact." Mot. at 7. They contend that Plaintiffs' Complaint references only potential and hypothetical injury, and Plaintiffs' harm is limited to expending resources directed toward establishing a basis for bringing this lawsuit. *Id.* at 8.

In response, Plaintiffs argue that the allegations in their Complaint demonstrate that they have suffered and will continue to suffer injuries sufficient to establish standing under Article III. Opp'n at 5. Specifically, Plaintiffs maintain that Defendants' activities frustrate Plaintiffs' charitable missions and force them to divert organizational resources. *Id.*

The United States Constitution limits the federal judicial power to designated "cases" and "controversies." U.S. Const., Art. III, § 2. To satisfy Article III's standing requirement, an organizational plaintiff must establish the "irreducible constitutional minimum of standing": "(1) injury in fact; (2) causation; and (3) redressability." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).[1]

---

[1] Although *Lujan* established the "irreducible constitutional minimum" test for standing in the context of an individual plaintiff, the same analysis is used for an organizational plaintiff. *Havens*

6

1     "An organization suing on its own behalf can establish an injury when it suffered 'both a
2     diversion of its resources and a frustration of its mission.'" *La Asociacion*, 624 F.3d at 1088
3     (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). "It cannot
4     manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a
5     problem that otherwise would not affect the organization at all." *Id.* (citing *Fair Emp't Council v.
6     BMC Mktg. Corp.*, 28 F.3d 1268, 1276-77 (D.C. Cir. 1994). However, when an organization is
7     forced to divert its resources to "identify and counteract" unlawful activity that frustrates its
8     mission, "there can be no question that organization has suffered an injury in fact" sufficient "to
9     warrant [its] invocation of federal-court jurisdiction." *Havens Realty Corp. v. Coleman*, 455 U.S.
10    363, 378-79 (1982).

11    In this case, Plaintiffs allege that they have redirected resources and staff time investigating
12    Defendants' practices, and these employees would have otherwise worked on other projects to
13    further Plaintiffs' missions. Compl. ¶¶ 1-2, 37-45. Plaintiffs' investigations would not be
14    necessary but for the actions of Defendants. *Id.* ¶¶ 37, 39, 41-43, 45. Further, because Plaintiffs
15    diverted these resources not only in response to Defendants' activities but also to counteract the
16    effect these events have on Plaintiffs' own outreach and education efforts designed to prevent
17    animal cruelty, Defendants' practices prevented them from pursuing other preferred avenues to
18    advance their mission. *Id.* ¶¶ 37, 41-42, 45. At this stage in the proceedings, the Court must take
19    Plaintiffs' allegations as true. Therefore, drawing all reasonable inferences in Plaintiffs' favor, the
20    Court finds Plaintiffs can establish that Defendants' acts perceptibly impair Plaintiffs' outreach
21    and education efforts by diverting resources from these efforts to counteract Defendants' allegedly
22    unlawful acts. *See, e.g., Fair Hous. Council v. Roommate.com*, 666 F.3d 1216, 1219 (9th Cir.
23    2012) (a housing rights organization had standing to challenge discrimination by a roommate
24    matching website, because the organization had diverted resources to "start[] new education and
25    outreach campaigns targeted at discriminatory roommate housing"); *El Rescate Legal Servs., Inc.
26    v. Exec. Office of Immigration Rev.*, 959 F.2d 742, 748 (9th Cir. 1992) (organizational plaintiffs

27    _____

28    *Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982) ("In determining whether HOME has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual.").

had standing where challenged policy "require[d] the organizations to expend resources . . . they otherwise would spend in other ways").

Defendants argue that Plaintiffs have not suffered injury in fact because the sole injury they have suffered is voluntarily expending resources. Mot. at 9. However, when an organizational plaintiff alleges injury from resource diversion, "standing analysis [does not] depend on the voluntariness or involuntariness of plaintiffs' expenditures." *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1140 (D.C. Cir. 2011). Instead, the focus is "on whether they undertook the expenditures in response to, and to counteract, the effects of the defendants' alleged [unlawful acts] rather than in anticipation of litigation." *Id.*

Defendants also argue that Plaintiffs' financial injuries were incurred solely to facilitate this litigation. Mot. at 5, 10. But Plaintiffs' Complaint alleges that their efforts were in furtherance of their campaigns and public outreach, not to generate standing for a lawsuit. Compl. ¶¶ 37, 42. Taking these allegations as true, the Court finds that such non-litigation expenses are financial injuries for Article III purposes. *See, e.g., Fl. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008) ("Costs unrelated to the legal challenge are different and do qualify as an injury, whether they are voluntarily incurred or not."). As in *Florida State*, Plaintiffs base their Complaint on harms incurred by other non-litigation branches of their organizations for activities undertaken in advance and not in contemplation of litigation. Compl. ¶¶ 38, 40, 43-44.

Because Plaintiffs allege the diversion of organizational resources to identify and counteract Defendants' events, which frustrate Plaintiffs' missions, the Court finds that Plaintiffs have established Article III injury-in-fact. Accordingly, the Court DENIES Defendants' Motion on this ground.

**B.   UCL Standing**

Defendants next argue that Plaintiffs lack statutory standing under the UCL because they have not suffered injury in fact and have not lost money or property. Mot. at 8. Specifically, Defendants argue that the sole injury Plaintiffs have suffered is voluntarily expending resources, which is not an injury. *Id.* at 9. In response, Plaintiffs argue that it is enough to show that they have diverted resources as a result of Defendants' alleged unlawful business practices. Opp'n at 8.

8

1    And, because these diverted resources are economic in nature, they establish standing under the
2    UCL. *Id.* at 10.

3    To assert a UCL claim, a plaintiff needs to have "suffered injury in fact and . . . lost money
4    or property as a result of the unfair competition." *Rubio v. Capital One Bank*, 613 F.3d 1195,
5    1203 (9th Cir. 2010) (quoting Cal. Bus. & Prof. Code § 17204). Thus, a plaintiff asserting a UCL
6    claim must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury
7    in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused
8    by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset
9    Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original). The requirement that
10   injury be economic renders standing under the UCL "substantially narrower than federal standing .
11   . . which may be predicated on a broader range of injuries." *Id.* at 324.

12   Here, Plaintiffs allege that they diverted significant resources to investigate and counteract
13   Defendants' events. Compl. ¶¶ 38, 42. Both ALDF and PETA spent money and invested
14   organizational resources to send agents to witness and record the GBR in other states. Compl. ¶¶
15   38, 43. Plaintiffs state that they plan to spend even more money and time to send staff to witness
16   and record the GBR, should it be held in California as planned. *Id.* Plaintiffs spent money
17   directly on admission to the events and indirectly on associated travel expenses. *Id.* Similarly,
18   both ALDF and PETA allege that they spent staff time—and therefore money in the form of
19   payroll expenses—requesting and reviewing public records to determine the location and legality
20   of future GBR events. *Id.* Plaintiffs allege that this diversion of economic resources prevented
21   them from advancing their missions and developing their organizations, thereby causing economic
22   injury. *Id.* ¶¶ 37, 39, 41-43, 45.

23   Organizational plaintiffs have standing under the UCL where they divert resources as a
24   result of a defendant's alleged unlawful business practices. *See S. Cal. Hous. Rights Ctr. v. Los
25   Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005) ("the Housing
26   Rights Center has standing because it presents evidence of actual injury based on loss of financial
27   resources in investigating this claim and diversion of staff time from other cases to investigate the
28   allegations here"); *Animal Legal Def. Fund v. HVFG LLC*, 2013 WL 3242244, at *3 (N.D. Cal.

June 25, 2013) ("a public advocacy firm such as ALDF can have standing under [the UCL] to challenge a business practice inimical to its purpose and against which the firm expends its resources, thus reducing the money and property it would otherwise have for other projects"); *Kwikset*, 51 Cal. 4th at 323 (citing *Hall v. Time*, 158 Cal. App. 4th 847, 854-55 (2008), as "cataloguing some of the various forms of economic injury," including organizational injury allegations from loss of financial resources in investigating claims and diversion of staff time). Taking Plaintiff's allegations as true, the Court finds that Plaintiffs have alleged facts sufficient to establish standing under the UCL. Plaintiffs allege that the GBR is inimical to their missions, and they have expended financial resources that would have otherwise been spent elsewhere. Accordingly, the Court DENIES Defendants' Motion on this ground.

**C.     Whether Plaintiffs State a Valid Claim**

Plaintiffs' UCL cause of action is predicated on Defendants' alleged violations of California Penal Code sections 597(b), 597b, and 597m, which prohibit, respectively, subjecting animals to needless suffering, fighting or worrying bulls, and promoting bloodless bullfights and similar events. Compl. ¶¶ 48, 49; Cal. Pen. Code §§ 597(b), 597b, 597m. Specifically, Plaintiffs allege "Defendants are already 'promot[ing] [and] advertis[ing] [a] . . . bloodless bullfight contest or exhibition, or . . . similar contest or exhibition,' in violation of section 597m of the California Penal Code. Compl. ¶ 49. If allowed to carry through with their plans, they will violate not only that section, but also section 597b, which prohibits making bulls fight with humans, and section 597(b), which prohibits causing "needless suffering" to animals." *Id*.

In their Motion, Defendants argue that Plaintiffs fail to state a claim because these California Penal Code sections cannot be enforced through a private right of action in civil court. Mot. at 10. Defendants maintain that Plaintiffs' attempt to bring their claim under the UCL is an improper attempt to circumvent this rule. *Id.* at 11. In response, Plaintiffs state that they are not attempting to state a claim under California's animal cruelty law, but rely instead on the UCL to provide a cause of action. Opp'n at 12-13. Plaintiffs argue that "[t]he Penal Code is merely what makes Defendants' business practices unlawful; it is not the source of Plaintiffs' cause of action. Civil causes of action predicated on violations of state statutes are not precluded merely because

10

the violated statute itself provides no private right of action." *Id.* at 14.

The UCL does not prohibit specific activities but instead broadly proscribes "any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200, et seq.). Under the "unlawful" prong, a practice violates the UCL if it also violates another state or federal law; the UCL "borrows" violations of other laws and treats them as independently actionable. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The UCL is designed to ensure "fair business competition" and governs both anti-competitive business practices and consumer injuries. *Boschma v. Home Loan Ctr.*, 198 Cal. App. 4th 230, 252 (2011) (internal quotation marks omitted). Its coverage has been described as "sweeping," and its standard for wrongful business conduct is "intentionally broad." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006).

Here, Plaintiffs allege that "Defendants are violating and plan to violate [the UCL] through their unlawful business acts and practices, which violate provisions of the California Penal Code." Compl. ¶ 48. As the basis of their UCL claim, Plaintiffs "borrow" from California Penal Code sections 597(b), 597b, and 597m.

Defendants argue that this claim must fail because the Penal Code provides no private right of action. Mot. at 10. Defendants cite to *Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136 (2008), in support of their argument. *Id.* In *Mendes*, ALDF attempted to bring a claim directly under California Penal Code section 597t, which provides that it is a misdemeanor to confine an animal without an "adequate exercise area." *Id.* at 140. The court concluded that there was no private right of action to directly enforce section 597t, and therefore held that ALDF could not directly enforce the Penal Code section. *Id.* at 142, 145. In this case, Plaintiffs do not seek to enforce the California Penal Code. Instead, they argue that Defendants are violating the UCL through their unlawful business practices. Compl. ¶ 48. Because the *Mendes* court held that the animal cruelty law contained no private right of action, but did not bar civil causes of action that invoke the animal cruelty law, the Court finds Defendants' argument unpersuasive. Further, the UCL provides for a private right of action against any unlawful business practice, including

11

violations of laws for which there is no direct private action. *VP Racing Fuels, Inc. v. Gen. Petrol. Corp.*, 673 F. Supp. 2d 1073, 1082 (E.D. Cal. 2009) (citing *Summit Tech., Inc. v. High–Line Med. Instruments, Co.*, 933 F. Supp. 918 (C.D. Cal. 1996)) ("[I]t is not necessary that the predicate law provide for private civil enforcement."); *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013).

Defendants further argue that if a private right of action for an alleged statutory violation is prohibited, that alleged violation cannot serve as the basis for a UCL claim. Reply at 3. Defendants cite to *Cel-Tech* in support of their argument. In that case, the California Supreme Court stated: "A bar against a cause of action 'may not be circumvented by recasting the action as one under [the UCL] . . . . A plaintiff may thus not 'plead around' an 'absolute bar to relief' simply by recasting the cause of action as one for unfair competition." *Cel-Tech*, 20 Cal. 4th at 182 (quoting *Rubin v. Green*, 4 Cal. 4th 1187, 1201 (1993), *Manufacturers Life Ins. Co. v. Superior Court*, 10 Cal. 4th 257, 283 (1995)). This language is taken from the *Cel-Tech* Court's discussion of *Rubin*, in which the plaintiff attempted to rely on the UCL to pursue an action based on conduct that was "absolutely immune from civil tort liability" under the litigation privilege of California Civil Code section 47(b).[2] *Rubin*, 4 Cal. 4th at 1203. The *Rubin* Court found that, "If the policies underlying section 47(b) are sufficiently strong to support an absolute privilege, the resulting immunity should not evaporate merely because the plaintiff discovers a conveniently different label for pleading what is in substance an identical grievance arising from identical conduct as that protected by section 47(b)." *Id.* at 1203. Here, Plaintiffs' Complaint borrows from California's animal cruelty laws, which do not contain any immunity or absolute privilege that would prevent a cause of action under the UCL. While Plaintiffs cannot directly enforce the Penal Code, they are not barred from bringing an unfair competition claim that borrows violations from the code. *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 565 (1998) ("Simply no basis exists for concluding that, by identifying and penalizing in Penal Code section 308 and the STAKE Act certain tobacco sales practices, the Legislature intended to bar unfair

---

[2] Section 47 exempts from liability a "publication or broadcast" made "[i]n any . . . judicial proceeding [or] . . . other official proceeding authorized by law." Cal. Civ. Code § 47(b).

1  competition causes of action based on such practices."). Thus, contrary to Defendants' assertion, a
2  private UCL claim is not barred whenever the predicate statute does not afford a private right of
3  action. *Id.* at 566.
4  Accordingly, accepting Plaintiffs' allegations as true, the Court finds that they have stated
5  a claim upon which relief may be granted. Defendants' Motion is therefore DENIED.

## CONCLUSION

Based on the analysis above, the Court DENIES Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: June 6, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge